IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

(1) DONITA BARNES, individually )
    and as next of kin of CYNTHIA KAY )
    HORTON, deceased, )
                                                       Plaintiff, )
vs. )   Case No. CIV-13-516-SPS
(1) UNITED STATES OF AMERICA, )
                                               Defendant. )

## PLAINTIFF'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

COMES NOW Plaintiff, Donita Barnes, individually and as next of kin of Cynthia Kay Horton, deceased, and hereby files her Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Cynthia Horton was a patient at Chickasaw Nation Medical Center ("CNMC") emergency room in Ada, Oklahoma, on August 25th and August 28, 2011. During those visits, cultures were performed and Ms. Horton was diagnosed with a resistant E. coli urinary tract infection.

2. Ms. Horton was admitted to CNMC on August 29, 2011. She was under the care of Drs. Augustin Shi, Preston Hucks and Sally Berger during this hospitalization.

3. All three physicians caring for Ms. Horton during the first hospitalization were employees and agents of CNMC.

4. Dr. Berger provided no care to Cynthia Horton anytime after September 8, 2011. After September 8th, she did not consult with any physician who did provide care to Ms. Horton.

5. During the August 29, 2011, hospitalization, Ms. Horton received a two-week course of IV antibiotics for her UTI.

6. Ms. Horton had Complete Blood Count ("CBC") tests performed on August 25th, 28th, 29th, 31st, September 4th, 6th, and 8th, during the first hospitalization at CNMC.

7. All of the tests, except September 8th, showed an elevated White Blood Cell count ("WBC").

8. An elevated WBC is one indication for infection.

9. The September 8, 2011, CBC showed a WBC of 10.7, only .1 under the upper limit of normal for the CNMC lab.

10. After the September 8th CBC, no further CBCs were performed by anyone at CNMC prior to Ms. Horton's discharge on September 13, 2011.

11. On September 8, 2011, an abdominal CT scan was performed on Ms. Horton. The radiologist reading the CT scan found evidence of air in the left hepatic lobe, which likely represented portal venous air.

12. The radiologist reading the September 8, 2011, CT scan recommended clinical correlation, aggressive medical therapy and a surgical consultation.

13. Left untreated or diagnosed, portal venous air is fatal.

14. A proper surgical consultation consists of a surgeon coming to the patient's bedside and examining the patient, reviewing the patient's medical records, including radiographic studies, and placing a note on the patient's chart.

15. No surgical consultation was ever obtained at any time at CNMC on Ms. Horton.

16. Ms. Horton had a finding of loose stool in her medical record at CNMC on September 11, 2011, consistent with diarrhea.

17. Ms. Horton was discharged on September 13, 2011, from CNMC.

18. At the time of her discharge on September 13th, Ms. Horton's physicians did not know the laboratory status of her infection.

19. Ms. Horton was suffering from diarrhea at the time of her discharge on September 13, 2011.

20. In the presence of portal venous air, diarrhea is a finding consistent with clostridium difficile ("C. diff")

21. C. diff is a foreseeable consequence of the two-week IV antibiotic therapy that Ms. Horton underwent in her August 29th through September 13th hospitalization at CNMC.

22. No test for C. diff was performed prior to Ms. Horton's September 13, 2011, discharge.

23. Ms. Horton was readmitted to CNMC on September 15, 2011. At the time of her readmission, she was suffering from nausea, vomiting, abdominal pain and diarrhea.

24. At the time of her readmission on September 15, 2011, Ms. Horton had a temperature of 100°, pulse of 123 and respirations of 18.

25. At the time of her readmission on September 15, 2011, Ms. Horton had a CBC performed. It showed a WBC of 28.3 platelets of 727,013 bands, all findings consistent with severe infection.

26. No CT scan was performed on September 15, 2011, the day of Ms. Horton's readmission.

27. A CT scan was performed on September 16, 2011. That CT scan revealed continued air collections in the left lobe of the liver. When correlated with the prior study, this was found to be most consistent with pneumatobilia, as the patient appeared to be status post cholecystectomy. The CT scan further found there to be marked diffuse thickening of the wall of the colon with surrounding edema and inflammation with an appearance favoring colitis.

28. Colon surgery should have been performed immediately on Ms. Horton based on the results of the 9/16/11 CT scan.

29. A test for C. diff was performed on 9/15/11 at 2155 hrs.

30. The results of the C. diff test performed on 9/15 were not received until September 18th at 1423 hrs. The results of the test were positive for C. diff.

31. Ms. Horton had CBC tests performed September 15th, 17th, 18th, and 19th at CNMC.

32. Each of these CBC tests showed markedly or critically elevated WBCs, bands and platelet count.

33. The findings of the September 15th, 16th, 17th, 18th and 19th CBCs were consistent with severe infection.

34. Ms. Horton was placed in the ICU at CNMC on September 18, 2011.

35. No surgeon was ever consulted at CNMC during the September 15, 2011, hospitalization.

36. The two surgeons employed at CNMC were not capable of handling a patient such as Ms. Horton. This fact was known to Drs. Shi and Hucks her treating physicians for the entirety of the September 15th hospitalization, as well as during the August 29th – September 13th hospitalization.

37. Ms. Horton was transferred to Integris Baptist Hospital on September 19, 2011.

38. Ms. Horton should have been transferred to Integris Baptist Hospital on September 15, 2011 based on her clinical signs and symptoms and laboratory findings upon her readmission.

39. Ms. Horton should have been transferred to Integris Baptist Hospital on September 16, 2011 based on the results of the CT scan performed that day.

40. A CT scan should have been performed on September 15, 2011, the day of Ms. Horton's readmission.

41. Ms. Horton's condition was much more favorable to have undergone and more likely than not survived surgery on September 15th, 16th, 17th, or 18th, 2011.

42. Upon her arrival at Integris Baptist Hospital, Ms. Horton was admitted to the ICU.

43. Dr. Hani Baradi, a surgeon, evaluated Ms. Horton soon after her arrival at Integris Hospital on September 15th.

44. Ms. Horton was also evaluated by a pulmonologist, Dr. John Huff, and a nephrologist, Dr. Guruprasad Manjunath.

45. Dr. Baradi decided to perform surgery on September 20, 2011, the day after his evaluation. Ms. Horton needed to be properly prepared for surgery due to her condition upon arrival at Integris Baptist on September 19, 2011.

46. On September 20, 2011, Dr. Baradi performed a laparotomy and total colectomy procedure with end-ileostomy. During that surgery, he also performed an omentectomy, extensive lysis of adhesions and repair of an incarcerated recurrent incisional incisional hernia with bilateral fascial releases.

47. In the course of this surgical procedure, Dr. Baradi found and described seeing ischemic bowel.

48. Cynthia Horton died on September 26, 2011. Her cause of death was acute respiratory distress syndrome with respiratory failure caused by C. diff induced colitis requiring surgery and sepsis.

49. Ms. Horton suffered extreme physical pain and suffering from her admission to CNMC on August 29, 2011, until her death on September 26, 2011. This Court finds those damages to be in the amount of $500,000.

50. Cynthia Horton suffered extreme mental pain and suffering from her initial admission to CNMC on August 29, 2011, until her death on September 26, 2011. This Court finds those damages to be in the amount of $500,000.

51. Cynthia Horton suffered physical injury during the time of her hospitalization at CNMC on August 29, 2011, until the date of her death September 26, 2011. This Court finds those damages to be in the amount of $250,000.

52. Medical expenses were incurred during Ms. Horton's hospitalization at Integris Baptist Hospital. Those expenses were a direct result of the substandard care she received at CNMC between August 29, 2011 and September 19, 2011. This Court finds the amount of those medical bills to be in the amount of $481,218.56.

52. Donita Barnes and Helen McKay have suffered grief and loss of companionship, as well at having incurred burial and funeral expenses as a result of the wrongful death of their mother. This Court finds those damages to be in the amount of $1 million.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of this case pursuant to 28 USC 1346, 1367, and 2671 et. seq.

2. CNMC is a facility that falls under the scope of the Federal Tort Claims Act, 28 USC section 2671 et seq.

3. The standard of medical care applicable to the physicians caring for Ms. Horton during her August 29, 2011 through September 13, 2011 hospitalization at CNMC requires that they obtain a proper surgical consultation as directed by the radiologist reading the 9/8/11 CT.

4. The applicable standard of medical care required Drs. Shi and Hucks to perform further laboratory studies between September 8, 2011 and September 13, 2011.

5. The standard of medical care required that Dr. Shi and Hucks perform a test for C. diff prior to discharging Ms. Horton from the first hospitalization at CNMC on 9/13/2011

6. The appropriate standard of medical care required that a CT scan be performed on Ms. Horton immediately upon her readmission to CNMC on September 15, 2011.

7. The appropriate standard of medical care required that either an immediate surgical consultation be had at CNMC upon Ms. Horton's readmission on September 15, 2011, so that the surgery she needed could be performed at CNMC or in the alternative an immediate transfer to Integris Baptist or similar facility be effected where the surgery could be done.

8. The breaches of the applicable standard of care by Drs. Shi, Hucks, Berger and other agents and servants of CNMC proximately caused injuries and ultimately death of Cynthia Horton resulting in damages listed above in paragraphs 49 – 52.

9. The plaintiff Donita Barnes, individually and as next of kin of Cynthia K. Horton, deceased, has established by a preponderance of the evidence the necessary elements required to prevail in a claim for injuries due to medical negligence resulting in wrongful death.

10. The defendant the United States of America is liable for the injuries and damages suffered by Cynthia Horton and Donita Barnes, individually and as next of kin of Cynthia K. Horton, as enumerated above in paragraphs 49 – 52.

Respectfully submitted,

   /s/ S. Randall Sullivan
S. Randall Sullivan, OBA No. 11179
RANDALL SULLIVAN, P.C.
1900 N.W. Expressway, Suite 605
Oklahoma City, Oklahoma 73118
(405) 236-2264
(405) 236-2193(Fax)
randy@sullivanlawcenter.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

     I hereby certify that on March 27, 2015, I electronically filed the foregoing with the Clerk of Court using the ECF System. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

susan.brandon@usdoj.gov

   /s/ S. Randall Sullivan
S. Randall Sullivan