IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DONITA BARNES, individually )
and as next of kin of )
CYNTHIA KAY HORTON, deceased, )
)
              Plaintiff, )
vs. ) Case No. CIV-13-516-SPS
)
UNITED STATES OF AMERICA, )
)
              Defendant. )

## TRIAL BRIEF OF THE PLAINTIFF, DONITA BARNES

**COMES NOW** the Plaintiff, Donita Barnes, individually and as next of kin of Cynthia K Horton, deceased, by and through her counsel of record S. Randall Sullivan of Randall Sullivan, PC, and submits the following as their Trial Brief on the issues to be litigated.

## FACTS

Cynthia Horton was 63 years of age at the time of her admission to Chickasaw Nation Medical Center ("CNMC") on August 29, 2011. She was admitted for inpatient antibiotic management of her resistant E. coli urinary tract infection. The admission was necessitated due to failure of oral antibiotics to manage her UTI after an August 25, 2011, emergency room visit at CNMC. During this hospitalization, Ms. Horton's care was managed by Dr. Augustin Shi, Dr. Preston Hucks and Dr. Sally Berger. Dr. Berger's involvement in the case ended on September 8, 2011.

During the course of that first hospitalization, Ms. Horton had several laboratory tests that were important in the attempts to diagnose her condition. She had Complete Blood Count test ("CBC") on August 28th, 29th and 31st, September 4th, 6th, and 8th. Each of these CBCs found elevated white blood cell counts with the exception of the test performed on

September 8th. That CBC found a white blood cell count of 10.7, which was only .1 below the upper limit of normal on the CNMC lab test. An elevated white blood cell count is a finding consistent with infection. In spite of these elevated white blood cell counts, no CBC test was ordered after the 9/8 test prior to Ms. Horton's discharge on 9/13. The United States of America and their expert witness Dr. Mark Meese claim that Ms. Horton's white cell count was normal upon her discharge. The fact is that none of her caregivers knew what the status of her infection was at discharge because she did not have a CBC for the last five days of that hospitalization.

A CT scan was performed on Ms. Horton's abdomen on September 8th. The report of that CT scan found "evidence of air within the left hepatic lobe which likely represents portal venous air. Clinical correlation and aggressive medical therapy recommended." Left untreated, portal venous air is fatal. The report further found, "Please note that no acute process is seen at this time. However, the presence of portal venous air raises the possibility of bowel pathology, ischemic bowel and other significant processes and therefore surgical consultation is recommended." No proper surgical consult was ever obtained. According to even Dr. Hucks, a proper surgical consult would consist of a surgeon coming to the patient's bedside and examining the patient as well as looking at the radiographic studies and records. Finally, to constitute a proper surgical consult, the surgeon would need to put a note on the chart. None of that occurred. Dr. Berger claimed that she had a brief conversation with a surgeon at CNMC, although she could not remember which of the two employed surgeons it was. She, likewise, did not make a note of that conversation in Ms. Horton's medical record. Simply stated, that is not a proper surgical consult and one never occurred.

In all likelihood, Ms. Horton was developing a condition known as Clostridium difficile ("C. diff") prior to her September 13th discharge. C. diff is a very foreseeable

consequence of the intensive antibiotic therapy she underwent. No test for C. diff was performed prior to her discharge on September 13th.

Ms. Horton was readmitted to CNMC on September 15th, only two days after her discharge. She was admitted with severe diarrhea, abdominal pain, nausea and vomiting. She also had a fever and an elevated heart rate and respirations.

A test for C. diff was performed on September 15th. Unfortunately, CNMC, in September 2011, chose to send their test to an outside laboratory to be analyzed. It was three full days before the positive results of the C. diff test were received.

Both Drs. Shi and Hucks have testified that there was no consultation of any sort with the surgeon during the 9/15 hospitalization. They both agree that the severity of Ms. Horton's illness made it such that the CNMC surgeons would have been over their heads in attempting to care for her.

Given the degree of her illness, taken in conjunction with her history, the physicians at CNMC should have immediately transferred Ms. Horton on September 15th if they did not have the proper physicians to care for her. Ms. Horton was not transferred until September 19, 2011.

Although Ms. Horton was very ill when she arrived at CNMC on September 15th, she had not yet progressed to multi-system organ failure. If she had been transferred to a more specialized facility with better qualified physicians prior to developing organ failure, she probably would have likely survived her surgery and would be alive today.

On 9/16/2011, another abdominal CT scan was performed at CNMC. It showed a markedly thickened colon. Given Ms. Horton's condition and history, Dr. Hani Baradi will testify that she should have been operated immediately based on the CT scan alone. Dr. Baradi is the

surgeon who ultimately operated on Ms. Horton at Integris Baptist Hospital on September 20, 2011. He performed a total colectomy procedure removing her badly infected colon.

Ms. Horton's condition dramatically deteriorated over the four days she was hospitalized during the second hospitalization at CNMC. Her white blood cell counts were markedly elevated or in the critical value range. The main response of the physicians caring for her at CNMC was to place her in the ICU on September 18th. This was too little too late as she should have already been to Oklahoma City and had surgery days before September 18th. Ms. Horton ultimately succumbed to her infection on September 26, 2011, following Dr. Baradi's surgery of September 20th.

C. diff and ischemic bowel are very serious conditions and carry real risks of mortality. By the time the CNMC physicians finally transferred Ms. Horton to Oklahoma City, her chances for recovery had lessened. However, if they had properly diagnosed her condition and sent her to Oklahoma City on the early part of the September 15th hospital stay, she more likely than not would have survived.

## LEGAL ISSUES

There are no complex legal issues in the case. It is a relatively straightforward case of medical negligence under Oklahoma law. Traditional concepts of duty, breach of duty and causation apply. The plaintiffs contend that the physicians caring for Ms. Horton at CNMC were agents and servants of the United States of America and the CNMC. The government agrees with this claim.

The case is governed by the Federal Tort Claims Act. The government agrees with this contention as well.

## CONCLUSION

4

**WHEREFORE**, judgment should be entered for the Plaintiff, Donita Barnes, individually and as Next of Kin of Cynthia K. Horton, deceased, in an amount to be determined by the Court.

Respectfully submitted,

/s/ S. Randall Sullivan
S. Randall Sullivan, OBA No. 11179
RANDALL SULLIVAN, P.C.
1900 N.W. Expressway, Suite 605
Oklahoma City, Oklahoma 73118
(405) 236-2264
(405) 236-2193(Fax)
randy@sullivanlawcenter.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2015, I electronically filed the foregoing with the Clerk of Court using the ECF System. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

susan.brandon@usdoj.gov

/s/ S. Randall Sullivan
S. Randall Sullivan